IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| RUTH A. PITTMAN, | ) | |
|---|---|---|
| | ) | Case No.: 10 C 50034 |
| Plaintiff, | ) | |
| | ) | |
| | ) | Hon. P. Michael Mahoney |
| v. | ) | U.S. Magistrate Judge |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Ruth A. Pittman seeks judicial review of the Social Security Administration Commissioner's decision to deny her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 405(g). This matter is before the magistrate judge pursuant to the consent of both parties, filed on February 23, 2010. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

**II.    Administrative Proceedings**

Claimant filed her application for SSI on December 14, 2007 alleging a disability onset date of December 1, 2007. (Tr. 78, 82.) Her application was denied initially and on reconsideration. (Tr. 23, 29.) Claimant filed a request for a hearing on April 28, 2008, though she checked a box indicating that she did not wish to appear at a hearing. (Tr. 33.) The form instructed Claimant to complete Waiver Form HA-4608 if she checked the box stating that she

1

did not wish to appear. (Tr. 33.) There is no indication that Claimant ever completed the Waiver Form. The Hearing Officer Director sent Claimant an acknowledgment of the request for a hearing and a hearing was eventually scheduled for April 15, 2009. (Tr. 34, 47.) Claimant returned the Acknowledgment of Receipt form attached to the Notice of Hearing indicating that she could not be present at the time and place chosen for the hearing because she did not know how to get there and could not leave her father alone. (Tr. 61.) Claimant's counsel clarified Claimant's response in a March 24, 2009 letter to the ALJ indicating that Claimant was caring for her ailing father who was afflicted with Parkinson's Disease, and could not leave him alone to attend her hearing. (Tr. 62.) Counsel's letter asked the ALJ whether Claimant should withdraw her request for a hearing or request a postponement. (Tr. 62.)

There is no evidence in the record to indicate whether the ALJ responded to Claimant's note or her counsel's letter indicating that she could not attend the hearing. On April 13, 2009, two days prior to the scheduled hearing, Claimant's counsel wrote a letter to the ALJ stating that he explained to Claimant that her reasons for not being able to appear at the scheduled hearing did not constitute sufficient grounds for a postponement, and that the ALJ would proceed to decide Claimant's case without a hearing. (Tr. 137.) The letter also stated that Claimant "understands and accepts this and has given me the authorization to speak for her regarding this matter." (Tr. 137.) The ALJ denied Claimant's claim for disability benefits without an oral hearing on May 26, 2009 pursuant to 20 C.F.R. 416.1448(b). (Tr. 13, 16.) Because the Appeals Council denied Claimant's Request for Review regarding the ALJ's decision, that decision constitutes the final decision of the Commissioner. (Tr. 9.)

**III.     Background**

Claimant was born on November 10, 1960, making her 47 years old as of her alleged onset date. (Tr. 78.) Her application indicated that Claimant was married and lived in a house with her family. (Tr. 82, 98.) At the time of her application, she was 5' 3" and 231 pounds. (Tr. 81.) Claimant attended special education classes and completed high school. (Tr. 86.)

She reported previous work experience as a machine operator, inspector, and laundry assistant. (Tr. 88.) Claimant worked as a machine operator between 1975 and 1989 on a full-time basis. (Tr. 88.) The job required her to operate mechanics and carry material weighing up to 20 pounds 50 yards to a machine. (Tr. 83, 89.) Claimant worked full-time as an inspector at a plastics factory between 1990 and 1994, where she inspected and packed parts. (Tr. 88, 90.) She frequently had to lift 25 pounds at the inspector job. (Tr. 90.) Claimant worked as a laundry assistant at a nursing home from 1994 to 1996. (Tr. 88.) Her application indicates that she performed this job two days per week for three hours at a time. (Tr. 91.) At this job, she was required to carry laundry and deliver it to rooms, which required lifting up to 25 pounds frequently. (Tr. 91.) Claimant's Disability Report, as submitted to the State Agency, lists that she stopped working in March of 2000 because she was unable to get along with her bosses. (Tr. 82.)

Claimant listed her disability as a hand deformity that caused her to be unable to lift one hand. (Tr. 82.) A Physical Impairments Questionnaire shows that Claimant described pain when using kitchen tools to prepare a simple meal, no hand strength to open twist lids on jars and food packages, and an inability to grip bags or groceries, a basket of laundry, or to take out trash. (Tr. 96.) Claimant also listed pain when opening the door to a car or getting out of a chair. (Tr. 97.)

Claimant's Function Report, completed on January 16, 2008, describes a typical day as

3

getting up and dressed, eating, going out, and watching television. (Tr. 98.) Claimant takes care of her father by taking him to appointments and feeds family pets with the help of her husband and daughter. (Tr. 99.) Her pain affects her sleep, and she cannot wash her hair without help. (Tr. 99.) Claimant's husband prepares meals, but she does laundry and cleaning. (Tr. 100.) Claimant is able to drive, get groceries once a week, and handle her finances. (Tr. 101.) She goes out daily and sometimes shops. (Tr. 101-02.) Activities of lifting, reaching, and using hands were marked as being affected by Claimant's clenched fist syndrome. (Tr. 103.) Claimant is able to walk three blocks before resting, pay attention for two hours, follow written and spoken instructions, and get along with authority figures. (Tr. 103-04.) She was laid off from her last job at a nursing home in 2005 because she could not get along with her boss. (Tr. 104.)

On February 8, 2008, John Frye ("Frye") filled out a vocational assessment form on behalf of the State Agency. (Tr. 107.) Frye rendered his opinion in the context of Claimant's medical history of hypertension and right hand contracture deformity. (Tr. 107.) Frye found that Claimant retained a capacity for no more than light work. (Tr. 107.) Claimant had the additional restrictions that she has only the occasional ability to crawl and was limited to handling and fingering with the right hand occasionally. (Tr. 107.) Frye found that Claimant was not capable of performing any past relevant work either as described or as generally done in the national economy because her past work is more than light or required more than occasional handling and fingering in nature. (Tr. 107.) Frye opined that there were a sufficient number of jobs within the occupational base which could be performed by persons with Claimant's limitations, including the examples of page, furniture rental consultant, and financial investigator for dealer accounts.

4

(Tr. 107.)

IV. **Medical Evidence**

On September 27, 2007, Claimant saw Dr. Shailesh R. Virani, M.D., with stiffness in her right hand which she had been experiencing for two years. (Tr. 156.) Dr. Virani observed that Claimant was unable to extend the joints on her second, third, and fourth fingers, but denied any wrist pain, numbness, or tingling. (Tr. 156.) Claimant was diagnosed with right hand contracture deformity, most likely secondary to Dupuytren's contracture, and with hypertension. (Tr. 156.) Dr. Virani prescribed atenolol for Claimant's blood pressure and referred her to an orthopedic surgeon. (Tr. 156.) On the same date, Dr. Virani filled out a Medical Evaluation Form for the State Agency indicating that Claimant had up to 20 percent reduced capacity in her finger dexterity on her right hand. (Tr. 140-41.) The Evaluation Form indicated that Claimant could lift no more than 20 pounds and no more than 10 pounds frequently. (Tr. 141.) Claimant was not limited in her ability to perform activities of daily living. (Tr. 141.)

Claimant saw Dr. Virani on October 11, 2007 for a follow-up appointment relating to her hypertension. (Tr. 154.) Claimant was advised to follow a low-salt diet, to avoid fast food, and to try to eat fruits and vegetables. (Tr. 154.) Dr. Virani increased the dosage on her blood pressure medication. (Tr. 154.) On October 25, 2007, Claimant had another follow-up appointment regarding her blood pressure. (Tr. 152.) Dr. Virani noted that Claimant's systolic blood pressure ran in the 140s or 150s, but that she denied any other complaints. (Tr. 152.) Dr. Virani changed her mediation to chlorthalidone, and advised Claimant to follow up in one week. (Tr. 152.) At the follow-up appointment on November 1, 2007, Claimant presented with hypertension as her only complaint and Dr. Virani's treatment was consistent with previous

5

visits. (Tr. 150.)

Claimant had an orthopedic consultation with Dr. Timothy G. Havenhill, M.D., on January 3, 2008. (Tr. 180.) Claimant reported pain in her right long, ring, and small fingers dating to 1996 without any apparent cause. (Tr. 180.) Dr. Havenhill noted no swelling or loss of sensation in the fingers, normal capillary refill, and no Dupuytren's cords. (Tr. 180.) Claimant was assessed as having right hand contractures likely secondary to clenched fist syndrome. (Tr. 180.) Dr. Havenhill found there to be no organic cause to Claimant's condition that reasonable surgical intervention would be likely to help. (Tr. 180.) Dr. Havenhill's assessment suggests that Claimant's condition might be secondary to psychological issues. (Tr. 180.)

Dr. Ernst Bone, M.D., filled out a Physical Residual Functional Capacity Assessment ("RFC") on February 7, 2008. (Tr. 174.) Dr. Bone indicated that Claimant was capable of lifting 20 pounds occasionally, 10 pounds frequently, standing or walking for about 6 hours in an 8-hour workday, sitting for about 6 hours in an 8-hour workday, and was limited in her ability to push and pull. (Tr. 168.) Dr. Bone opined that Claimant would be limited to occasionally climbing ladders, ropes, and scaffolds and occasionally crawling. (Tr. 169.) She would also be limited in handling (gross manipulation) and fingering (fine manipulation). (Tr. 170.) No other functional limitations were noted. (Tr. 170-73.) Dr. Bone's opinion was affirmed by Dr. Charles Kenney, a reviewing physician, on April 14, 2008. (Tr. 177.)

On February 8, 2008, Claimant saw Dr. Verani for a follow-up regarding her hypertension. (Tr. 145.) Claimant's blood pressure was found to be 120/80 and she was advised to continue on her medications and return in three months. (Tr. 145.)

Dr. Havenhill wrote a letter addressed "To Whom It May Concern" that appears to have

6

been faxed to an office related to Claimant's application for Social Security. (Tr. 163.) The letter indicates that Claimant has right hand contractures secondary to clenched fist syndrome. (Tr. 163.) Dr. Havenhill wrote that there was no surgical intervention that would help the Claimant and that he believed the cause to be psychological rather than organic. (Tr. 163.) The letter indicates that Claimant is likely at maximum improvement and that surgery would not provide a benefit. (Tr. 163.)

On March 14, 2008, Claimant presented to Dr. Virani with bronchitis. (Tr. 143.) She had a cough but denied wheezing or having trouble breathing. (Tr. 143.) Claimant's blood pressure was recorded as 132/86. (Tr. 143.) Claimant returned to see Dr. Virani for a check-up on May 15, 2008. (Tr. 185.) Claimant's blood pressure was normal, and her hypertension was assessed as being stable. (Tr. 185.) Claimant was advised to return in three months. (Tr. 185.) On August 21, 2008, Claimant's check-up with Dr. Virani revealed normal blood pressure. (Tr. 183.) Claimant also complained of a persistent dry cough, and Dr. Virani advised her to follow-up in two weeks if the cough did not subside. (Tr. 183.)

On March 26, 2009, Dr. Virani filled out a Physical RFC Questionnaire. (Tr. 189.) Dr. Virani described Claimant's prognosis as fair and described pain only when Claimant extended the finger joints on her right hand. (Tr. 189.) The form also listed anxiety as a psychological condition that would limit Claimant to low stress jobs. (Tr. 190.) Dr. Virani opined that Claimant's pain or other symptoms would rarely be severe enough to interfere with attention and concentration needed to perform simple work tasks. (Tr. 190.) Claimant could sit for more than two hours at a time before needing to get up and stand for more than two hours at a time before needing to sit down or walk around. (Tr. 190.) Dr. Virani listed Claimant as being able to sit for

7

about two hours in an 8-hour day and stand for about four hours in an 8-hour day. (Tr. 191.) Claimant could lift 50 pounds occasionally and 20 pounds frequently. (Tr. 191.) Dr. Virani noted that Claimant would be able to grasp, turn, and twist objects with her right hand and engage in right-handed fine manipulation for 50% of an eight hour workday. (Tr. 192.)

## V. Standard of Review

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). The ALJ's legal conclusions are reviewed de novo. *Binion v. Charter,* 108 F.3d 780, 782 (7th Cir. 1997). However, the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the [ALJ]." *Id*. The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case are entrusted to the Commissioner. *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner."). The court may remand to the Commissioner where there is a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g).

If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). "Substantial evidence" is "evidence which a reasonable mind would accept as adequate to support a conclusion." *Binion*, 108 F.3d at 782. If the ALJ identifies supporting evidence in the record and builds a "logical bridge" from that evidence to the conclusion, the

ALJ's findings are supported by substantial evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

**VI.     Framework for Decision**

"Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether any other work exists in significant numbers in the national economy which accommodates the claimant's residual functional capacity and vocational factors. The court will analyze each of these factors to determine whether the Commissioner's decision was supported by substantial evidence.

**VI.     Discussion**

Before proceeding to the merits of the ALJ's determination that Claimant was capable of performing her past relevant work, the court will address Claimant's procedural argument that Claimant was deprived of her right to a hearing. Claimant argues that she was denied a right to appear at a hearing before the ALJ without notice or good cause. Specifically, Claimant argues that no valid waiver of her hearing was ever made, and that the ALJ committed a reversible error by issuing a ruling without a hearing.

An ALJ may decide a case on the record without an oral hearing if a claimant and all other parties indicate in writing that they do not wish to appear before the ALJ at an oral hearing. 20 C.F.R. 416.1448(b)(i). Social Security Ruling ("SSR") 79-19 establishes the requirements necessary for a valid waiver of an individual's right to appear at a hearing before an ALJ. SSR 79-19. Prior to the issuance of SSR 79-19, the only requirement for a valid waiver was that it be in writing, and this could be accomplished by checking a box on Form HA-501, the Request for Hearing Form. *Id.* The Social Security Administration found that adequate protection of a claimant's right to appear at a hearing was an important objective, particularly for disadvantaged appellants. *Id.* In light of the importance of hearing appearance rights, the SSA found that modification of policies was warranted and enacted SSR 79-19. *Id.* SSR 79-19 states the following with regard to the notice that must be given to claimants:

> An individual who files a request for hearing must be given a thorough explanation of the hearing procedure. The individual should fully understand his or her rights to appear personally before the presiding officer and present evidence, to introduce witnesses and oral or written arguments, and to be represented by an attorney or other person of his or her choice. The individual must also be advised of the value of personal appearance at a hearing. It should be made clear that, in some cases, additional evidence obtained at the hearing, particularly through personal appearance and/or oral testimony, may be essential to the proper evaluation of the factors at issue.

*Id.* at *2.  After such an explanation has been given, a claimant or her counsel may waive her right to a hearing through a signed statement.  *Id.*  The statement must include the following:

> 1. a thorough explanation of the hearing procedure has been given;
>
> 2. the right to personal appearance at the hearing to testify and present evidence has been explained;
>
> 3. an explanation has been given of the right to representation at the hearing by an attorney or other person of the individual's choice;
>
> 4. it has been explained that, in some cases, additional evidence obtained thorough oral testimony and personal presence before the presiding officer may be of value in evaluating the issues;
>
> 5. the individual has been advised that, if he or she does not appear, the claim will be decided solely on the written evidence then in file plus any additional evidence submitted by the individual or the representative or obstained by the hearing officer.
>
> 6. the individual has been advised that he or she may withdraw the waiver of the right to appear at the hearing at any time prior to mailing of the notice of the decision.

*Id.* at *2-3.  If an ALJ does not receive a statement containing the above assertions, then the ALJ must request one.  *Id.* at 3.

On April 28, 2008, the SSA received a Request for Hearing by Administrative Law Judge form from Claimant with a box marked indicating that Claimant did not wish to appear at a hearing.  (Tr. 33.)  The Form indicated that Claimant was not represented at the time.  (Tr. 33.)  Underneath the check box indicating a preference to waive a hearing, Form HA-501 advises claimants to fill out Waiver Form HA-4608.  (Tr. 33.)  There is no indication in the record that Claimant ever submitted Form HA-4608.  Claimant was appointed counsel on January 15, 2009, and received a Notice of Hearing letter on April 15, 2009.  (Tr. 44, 47.)  Claimant and her counsel responded to the Notice of Hearing in writing by indicating that Claimant did not have

the ability to get to a hearing and could not leave her ailing father. (Tr. 61-62.) The letter from Claimant's counsel sought advice on whether to withdraw Claimant's request for a hearing or to request a postponement. (Tr. 62.) The record reveals no response from the ALJ. On April 13, 2009 – two days prior to the scheduled hearing – Claimant's counsel sent the second letter to the ALJ indicating that Claimant "understands and accepts" that her reasons for being unable to appear at the hearing "did not constitute sufficient grounds for a postponement" and that the ALJ would proceed to decide the case. (Tr. 137.) The record does not confirm what, if anything, Claimant told her counsel prior to the letter being sent to the ALJ. Nevertheless, the ALJ found that Claimant "knowingly and voluntarily waived in writing the right to personally appear and testify at a hearing," and issued her decision pursuant to 20 C.F.R. 416.1448(b). (Tr. 16.)

The court finds SSR 79-19 to be clear in its description of the documentation required for a claimant to waive her right to a hearing. The reasons set forth by the SSA for creating SSR 79-19 are particularly relevant in this case, where the record indicates that Claimant has an anxiety disorder and potentially further psychological symptoms intertwined with her alleged physical condition. Further, Claimant's reasons for requesting a postponement do not reference anything about waiver of rights, and are instead focused on personal circumstances that make her attendance more difficult. It is clear the ALJ did not follow the procedures described in SSR 79-19 to create a valid waiver of the hearing. The Commissioner acknowledges in its motion for summary judgment that the ALJ should have obtained a waiver form.

The Commissioner instead argues that the ALJ's decision should be upheld because remand is only warranted if the ALJ's failure to hold a hearing prejudiced Claimant. The Commissioner relies on *Biswas v. Comm'r of Soc. Sec.*, No. 05-3828, 2007 U.S. App. LEXIS

4330 (3rd Cir. 2007), a case that the Third Circuit Court of Appeals designated as not precedential. In its *Biswas* decision, the Third Circuit found that a claimant was not prejudiced by an ALJ's failure to hold a hearing despite the absence of a written waiver by the claimant. The Third Circuit reasoned that claimant had two hearings scheduled, had attorneys advocate to the ALJ on his behalf, submitted medical evidence to the ALJ, and was no longer disabled by the time of the scheduled hearing. *Id.* at 4. Because the claimant was no longer disabled, the Third Circuit believed this eliminated the need for the ALJ to observe the claimant's present condition.

The court finds that Claimant's situation indicates that she may have been prejudiced by the ALJ's failure to hold a hearing. The administrative record and the ALJ's decision contain material inconsistencies that could have been clarified through testimony from Claimant. For example, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible, though the ALJ never examined Claimant as to her statements. The ALJ found Claimant's anxiety to be "less than severe," based on a perceived lack of evidence showing limitations arising from any mental impairments, but Claimant's treating physician indicated in an RFC that she would be limited to low stress jobs based on her anxiety. (Tr. 191.) The ALJ also noted in her opinion that Claimant was advised to pursue psychological treatment relative to her contracture deformity, but failed to do so. (Tr. 18.) The ALJ should consider the possibility that a failure to seek necessary treatment was caused by the mental illness itself. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). All of the above would have been reasonable lines of inquiry at a hearing.

The ALJ also found Claimant capable of her past relevant work as a laundry aide as it was "actually and generally performed." (Tr. 20.) This finding is inconsistent with the

13

vocational assessment in the record, which apparently did not take into consideration Claimant's work as a laundry aide. It is likely that testimony at a hearing from Claimant and/or a vocational expert would be helpful in determining both whether Claimant's work as a laundry aide was substantial gainful employment and whether Claimant was capable of performing the work. The Work History Report in the record describes Claimant's laundry aide job as "laundry," with lifting and carrying requirements explained as "carrying laundry and delivering it to rooms." (Tr. 91.) The ALJ made no findings as to the physical and mental demands of Claimant's past work, as required by SSR 82-62.

For the foregoing reasons, the court finds that the ALJ's did not follow the procedures required by SSA to issue a decision without a hearing. The ALJ's failure to conduct a hearing without a valid waiver by Claimant could have prejudiced Claimant's case, and this error is cause for remand. There is no need for the court to address the ALJ's substantive four-step analysis at this time because the court finds that the record was not appropriately developed consistent with SSA regulations and procedures. The case shall be remanded with instructions that the ALJ conduct a hearing or otherwise proceed consistent with this order.

**VII.    Conclusion**

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to conduct further proceedings in accordance with this opinion.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

**DATE**:December 9, 2011